# Wesner *versus* Stein and Greenawalt.

1. Where an acknowledgment or admission is relied on, to avoid the bar of the Statute of Limitations, in the absence of an express promise to pay the debt, it must amount to a clear and unambiguous recognition of an existing debt, so distinct and expressive as to preclude hesitation as to the debtor's meaning, and as to the particular debt to which it applies. It must, moreover, be consistent with a promise to pay.

2. A debt is not destroyed by the running of the Statute of Limitations, but the right of action or remedy is lost. When that is restored, the declaration is still on the original contract, and not upon the acknowledgment or new promise. Such acknowledgment is but a waiver of the statutory defence.

3. Part payment of a debt, is a sufficient acknowledgment of its existence from which to infer a promise to pay. But such payment, in order to have such effect, must be made to the creditor or his known agent, by the debtor himself, or by some person authorized to act for him.

4. If such part payment be made, not by the direction of the debtor, but in his presence and hearing, without anything on his part indicating that he does not participate in it, this fact may be submitted to the jury, as evidence of a promise on the part of the debtor to pay, so as to avoid the running of the statute.

5. The giving of instructions by the surety upon a note, against which as to him the Statute of Limitations has run, to obtain for him a judgment against the maker of the note, in order to render him secure in relation thereto, should be submitted to the jury as evidence of an acknowledgment or promise on his part to pay the debt to the holder of the note.

[Wesner *v.* Stein and Greenawalt.]

March 3d 1881.   Before SHARSWOOD, C. J., MERCUR, GORDON, PAXSON, TRUNKEY, STERRETT, and GREEN, JJ.

Error to the Court of Common Pleas, of *Berks county:* Of January Term 1881, No. 72.

Assumpsit, brought May 2d, 1879, by Willoughby Wesner against Moses Stein and Amos Greenawalt, upon the following promissory note.

$500.                          Albany, April 1st 1870.

One year after date, I promise to pay to the order of Willoughby Wesner Five hundred dollars, with interest, without defalcation, for value received.

MOSES STEIN,
AMOS GREENAWALT.

On the back of the note were the following endorsements :

Pait the interest on this note in ful from April 1870 til April 1871.  $30.

Pait the interest on this note in ful from April 1872 in ful. $30.00.

Pait the interest on this note in full from April 1st 1873 in full $30.

April 1, 1874, pait the interest in full for one year    $30.00.
April 1, 1875, pait the interest for one year in full.   $30.00.
April 1, 1876, pait the interest April 1876 in full.     $30.00.
April 2, 1876, pait the interest April 1877 in full.     $30.00.
April 2, 1878, pait the interest $30.
April 2, 1879, pait the interest fife mont in full.

It was admitted that Greenawalt signed the note as surety.  He pleaded the Statute of Limitations, and upon that issue the case went to the jury. . No judgment was asked against Stein.  Greenawalt having died, his administrators were substituted on the record.

On the trial it was shown that the several payments of interest endorsed on the note, with the exception of the last (dated April 2d 1879) were made by Stein.  This last payment was made by Mrs. Greenawalt, wife of Amos Greenawalt, to David Wesner, agent for plaintiff, but the defendants alleged and produced evidence to show that it was Stein's money which had been left at Greenawalt's house for the purpose of this payment under the following circumstances : Greenawalt lived midway between Stein and Wesner, and in April 1879, Mrs. Stein, having been to Wesner's with the money to pay the interest, and finding him absent from home, left word that she would leave the money as matter of convenience with Mrs. Greenawalt, her sister-in-law, where he could get it.  David Wesner, at the request of the plaintiff, called the same day at Greenawalt's house, when five months' interest was paid to him by Mrs. Greenawalt in the presence of her husband,

[Wesner *v.* Stein and Greenawalt.]

who, however, was suffering from paralysis.   The amount was not sufficient to pay the interest due in full, but Mrs. Greenawalt said that that was all the money that Mrs. Stein had left there.   Wesner took the money, and endorsed the receipt for five months' interest.

In November 1878, Moses Stein, being in failing circumstances, called a meeting of some of his creditors with a view to confessing judgments for their claims.   Amos Greenawalt being confined to the house by illness, directed his son, Amos Greenawalt, Jr., to attend the meeting, and to ask for a judgment on his claim, and also to secure him in case he should have to pay the notes on which he was security; and a judgment was then confessed by Stein to Amos Greenawalt, Sr., for $1511.10, which included the amount of the note in suit.   It was stated at the meeting by Amos Greenawalt, Jr., that the only object of including in the judgment the notes on which his father was surety was in case his father should become liable upon them.

The court submitted to the jury the question of fact, whether the payment of interest on April 2d 1879, was made by Stein by the hand of Mrs. Greenawalt, or whether it was made by Greenawalt or by his direction.   As to the effect of taking the judgment in favor of Greenawalt, to include the amount of the note in suit, the court charged, inter alia, as follows:

" The claim on this note is sought to be recovered against Mr. Greenawalt upon a promise that he should have to pay this debt, and that is the very point of this whole case; for, unless there has been a promise made by Greenawalt to pay this note, there can be no recovery against Greenawalt, and such a promise must be clear and explicit.   Its terms must be unequivocal and determinate. This is the law, and unless the jury can find that such a promise has been made by Greenawalt himself, there can be no recovery against him in this suit.   What is the evidence upon which it is relied that there was a promise made?   Without the promise there is no liability. * * * The taking of the judgment alone, if there was nothing else in it than the simple taking of the judgment alone, would be considered as having been taken to secure himself against any contingent liability that may be had against him by the Wesners.   If nothing more was said than that, the simple taking of it, at this meeting of the creditors, from Stein, would not amount to a promise to pay that note and to take it out of the Statute of Limitations.   What authority, first of all, had Amos S. Greenawalt when he went there?   Had he authority to bind his father to any new promise to pay this note?   Is there any evidence in the cause that he had authority to bind his father to the payment of this note?   From all the facts and circumstances in this case can the jury find that he had authority to bind his father to the payment of this note? * * * If there was no authority, and the

[Wesner *v.* Stein and Greenawalt.]

jury can find no authority from all the facts and circumstances of this case, which authorized the party to make a promise to pay this note, which was barred by the Statute of Limitations, there can be no recovery.  On the other hand, if the jury should find that there was authority to do that thing, was it done? is the next inquiry.  Was there such a promise made by Amos Greenawalt to bind his father to the payment of this note? * * * First of all, you will inquire whether there was any authority upon the part of Amos S. Greenawalt, the son, to make any obligation of his father to pay this note; whether he was authorized to bind his father to the payment of this note.  If he was not, that is the end of this suit.  If he was, then what took place there before the Squire at his office?  Did he obligate himself?  Did he expressly say, when he took that judgment, that he would pay those notes? that his father would pay them? that he would give another note for those notes?  This is for the jury to find.  The evidence is, so far as my recollection goes, and so far as I have read the testimony, that the judgment was taken before anything was said about it.  Does all this amount to a promise to pay?  If it does, the plaintiff would be entitled to a verdict; but if it does not, there is no case for the plaintiff."

Verdict and judgment for the defendants.  The plaintiff took this writ of error, assigning for error, inter alia, the charge of the court as above quoted.

*Frank R. Schell* (*H. Y. Kauffman* with him), for the plaintiffs in error.—A barred debt can be taken out of the Statute of Limitations either by an express acknowledgment of the indebtedness or by a new promise to pay.  If such an acknowledgment be shown, a promise to pay may be inferred.  The court erred in instructing the jury, that unless they found an express promise made by the defendant himself, there was no liability.  The facts proved were ample evidence of such an acknowledgment, and the jury should have been permitted an opportunity to infer a promise from the evidence.

*Richmond L. Jones* and *Adam H. Schmehl*, for the defendant in error.

The opinion of the court was delivered by MERCUR, J., May 2d 1881.

This action was on a promissory note.  Suit was commenced more than six years after the note became due.  The plaintiff relied on acts and acknowledgments of the defendant to avoid the bar of the Statute of Limitations.  The court charged that nothing less than a clear and explicit promise to pay was sufficient, that its

[Wesner *v.* Stein and Greenawalt.]

terms must be unequivocal and determinate, and the promise must have been made by the defendant himself.

It is settled that the acknowledgment or admission must be a clear and unambiguous recognition of an existing debt, and so distinct and expressive as to preclude hesitation as to the debtor's meaning, and as to the particular debt to which it applies, and must be consistent with a promise to pay; but it is not necessary that there be an express promise to pay in order to avoid the bar of the statute. The debt is not destroyed by the Statute of Limitations, but the right of action or remedy is lost. When that is restored, the declaration is still on the original contract, and not on the acknowledgment as a new promise; such acknowledgment is but a waiver of the statutory defence: Suter *v.* Sheeler, 10 Harris 310. Part payment of a debt within six years before suit brought is sufficient from which to infer a promise to pay, but the payment must be clearly proved: Burr *v.* Burr, 2 Casey 284; Yaw *v.* Kerr, 11 Wright 333; Patton's Executors *v.* Hassinger, 19 P. F. Smith 311. It was said by the present chief justice, in Barclay's Appeal, 14 P. F. Smith 69, there can be no more unequivocal acknowledgment of a present existing debt than a payment on account of it, and, according to all the authorities, this is all that is required to take a case out of the Statute of Limitations.

The original indebtedness must be established, then a clear, distinct and unequivocal acknowledgment of the existence of the debt, made within six years before the commencement of the suit, is sufficient to remove the bar of the statute: Watson's Executors *v.* Stem, 26 P. F. Smith 121. In the carefully considered case of Palmer *v.* Gillespie, 9 W. N. C. 535, decided at Pittsburgh last fall, we reviewed the authorities relating to an express promise, and held it was not necessary if the other essential ingredients are sufficiently proved. The acknowledgment must be made to the creditor or his known agent, and by the debtor himself, or by some one authorized to act for him. The second and fifth assignments are sustained.

The plaintiff relies on acts and declarations of the defendant and in his presence, all of which transpired within six months before suit brought. The note in suit was on its face joint and several, but in fact, as between the signers thereof, the defendant was surety. He had also signed one other note with Stein in like manner to Jonas Wesner. Stein, the principal debtor, became embarrassed. A meeting was appointed for him and certain of his creditors, to be held at the office of a justice, for the purpose of giving some security to his creditors. The defendant was ill and unable to attend. His son, Amos S., had a claim against Stein, and was going to the meeting to look after it. The defendant testified, "I told my son that he should ask for a judgment to

[Wesner *v.* Stein and Greenawalt.]

secure me, in case I should have to pay the notes on which I was bail." The son testified his father said to him "that I should take a judgment for him." Again, "my father said the Wesners won't take a judgment, and you would (had) better take a judgment for the bail also." He further testified that he attended the meeting in company with several other creditors; that he took for his father of Stein a judgment of $1511.10, which was made up by the claim of his father, and the two claims on which his father was bail. Afterwards, on the same day, he informed his father that he had "taken a judgment, and—the bail; and his father said yes, or that it was all right." This and other judgment obligations given at the same time were left with the justice, at whose office they were executed, under an agreement that they should all be entered at the same time, and they were so entered of record.

As evidence of further recognition of the debt, a payment was made on the note equal to the interest due, and indorsed thereon on the 2d April 1879. It was paid at the house of the defendant and in his presence, to the agent of the plaintiff, who had the note with him, and presented it. The defendant was afflicted with paralysis, and his wife handed the money to the agent. The latter swears, at the request of either the defendant or his wife, he there endorsed the payment. The contention in regard to this payment is, whether it was made by the defendant, or whether it was with money left by Stein with the wife and she merely handed it over for him. If it was paid by the husband's directions, it was evidence for the jury whether it was sufficient recognition of an existing indebtedness of his to create the presumption of a promise to pay. It was therefore error in the court to say to the jury, as in the tenth assignment, that if the son was not authorized to bind the father to the payment of the note " that is the end of this suit."

If this payment was not made by the directions of the defendant, but in his presence and hearing, without anything on his part indicating that he did not participate in it, the transaction, as well as his former directions to his son to take the judgment to secure him, were evidence to be submitted to the jury under proper instructions.

We discover no error in the first, sixth and thirteenth assignments. In so far as the remaining assignments are in conflict with this opinion, they are sustained.

Judgment reversed, and a *venire facias de novo* awarded.